IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
Pittsburgh Division

**ERNEST LEE DUNCAN, JR.,**

        **Plaintiff,**

v.                                         **Civil Action No. 2:22-cv-01717-PLD**

**PNC BANK, N.A. et al.,**

        **Defendants.**

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT
<u>HIS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

I. STATEMENT OF FACTS

Plaintiff incorporates by reference his Concise Statement of Material Facts ("CSMF") (ECF 116) filed in conjunction with his Motion for Partial Summary Judgment (ECF 115), his Response to Defendant's Statement of Material Facts Not in Dispute ("Pl's Resp. PNC CSMF") and Statement of Additional Facts in Support of His Opposition ("Pl's Add'l Facts Supp. Opp. PNC MSJ") (ECF 137), and his Reply to Defendant's Response to Plaintiff's CSMF ("Pl's Reply to PNC Resp. to Pl's CSMF") (ECF 142) filed in conjunction with this Memorandum.

II. ARGUMENT AND AUTHORITIES

A. **PNC Inaccurately Reported Plaintiff as Responsible for the Disputed Line of Credit**.

PNC's principal position seems to be that the consumer who makes a dispute must affirmatively prove the lack of his obligation on a credit account before the furnisher must correct its reporting. But the burden is actually the reverse. The statute's text itself states that PNC was required to delete Plaintiff's father's account when the item "is found to be inaccurate or incomplete <u>or cannot be verified</u> after any reinvestigation [under this subsection.]" 15 U.S.C. § 1681s-2(b)(1(E) (emphasis added). A consumer is not obligated to disprove the existence of a debt—to prove he did not agree to any Disputed Line of Credit. If PNC could not prove Plaintiff's liability, it could not have accurately reported the Disputed Line of Credit as "verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004); *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (a conclusion that the information is "unverifiable" occurs when a furnisher "determine[s] that the evidence necessary to verify disputed information either does not exist or is too burdensome to acquire.").

Even under Defendant's extra-statutory standard, Plaintiff more than met his burden to prove that PNC's credit reporting was inaccurate. (ECF 116, Pl's CSMF ¶¶ 8–15, 18, 22–26; Pl's Add'l Facts Supp. Opp. PNC MSJ ¶¶ 8–18, 22–29.) Plaintiff steadfastly denies his responsibility

1

for the Disputed Line of Credit, and PNC has not produced any evidence establishing that Plaintiff ever applied for or opened that account. (ECF 116, Pl's CSMF ¶¶ 2–5, 7, 18, 29–34, 36, 45–46; ECF 137, Pl's Resp. PNC CSMF ¶¶ 1–2, 4–5, 7, 9, 21, 25; ECF 137, Pl's Add'l Facts Supp. Opp. PNC MSJ ¶¶ 2–3, 4–5, 7, 18, 29–34, 36, 40, 52–53.) Faced with overwhelming evidence of inaccuracy, PNC retreats to grousing that Plaintiff's request for partial summary judgment improperly attempts to require PNC to prove the accuracy of its reporting. In so arguing, PNC studiously avoids acknowledging that once Plaintiff "properly presented evidence supporting [his] motion for summary judgment" PNC "must set forth specific facts illustrating genuine issues for trial." *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 850 (E.D. Va. 2017) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24 (1986)); *see also Wilkins v. Rozum*, 2008 WL 3833418, *2 (W.D. Pa. 2008) (once moving party, which bears the burden of proof at trial, shows "no reasonable jury could find for the nonmoving at trial . . . it is entitled to summary judgment unless the nonmoving party, in response comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.") (cleaned up). Plaintiff's evidence plainly establishes the inaccuracy of PNC's credit reporting, and PNC has not (and cannot) rebut that evidence. All that PNC can muster is a theoretical possibility of Plaintiff's personal liability for the Disputed Line of Credit, and PNC's inferential leaps "based upon a speculation or conjecture [do] not create a material factual dispute sufficient to defeat summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (cleaned up).

PNC nonetheless claims that the record establishes Plaintiff's responsibility for the Disputed Line of Credit. The purportedly undisputed facts PNC offers to substantiate this claim are neither undisputed nor facts, as Plaintiff exhaustively detailed in responding to them. (ECF 137, Pl's Resp. PNC CSMF ¶¶ 1–31.) Plaintiff does not admit that he was the owner of the

Disputed Line of Credit, or that he was bound to that account. (ECF 137, Pl's Resp. PNC CSMF ¶¶ 1–31.) Nor has PNC demonstrated that the unsigned "Cash Reserve Line Agreement" it dredged up connects to Plaintiff, Senior and Betty, the Checking Account, or the Disputed Line of Credit—PNC has no internal reference to this document or record of its mailing. (ECF 116, Pl's CSMF ¶ 6; ECF 137, Pl's Resp. PNC CSMF ¶ 1; ECF 137, Pl's Add'l Facts Supp. Opp. PNC MSJ ¶ 6.) It's a random document that establishes nothing about Plaintiff, the Checking Account, or the Disputed Line of Credit.

PNC claims its statements and correspondence for the Disputed Line of Credit and Checking Account establish Plaintiff's responsibility for the Disputed Line of Credit. PNC addressed statements and correspondence for the Disputed Line of Credit *only* to Senior and Betty (or Senior only) and adduced no evidence any of these documents, or any Checking Account statements or correspondence, were ever mailed to anyone. (ECF 116, Pl's CSMF ¶¶ 18, 29–34; Pl's Resp. PNC CSMF ¶ 4–5, 8, 13, 15–17, 22; Pl's Reply to PNC Resp. to Pl's CSMF ¶¶ 16, 18, 24, 26–34.) And, Mr. Duncan closed the Checking Account within months of Senior's death in 2010. (ECF 116, Pl's CSMF ¶¶ 9, 16; Pl's Reply to PNC Resp. to Pl's CSMF ¶ 16.) Again, PNC asserts facts as undisputed even when no record evidence exists to support those facts.

Mr. Duncan's disputes in December 2019 and March 2020 change nothing—he made those disputes because he mistakenly believed that PNC was reporting an old motor vehicle lease from the 1980s. (Pl's Resp. PNC CSMF ¶¶ 18–21; Pl's Reply to PNC Resp. to Pl's CSMF ¶¶ 35–36.) Remarkably, PNC, having never questioned Plaintiff about these disputes in his deposition, rejects his straightforward declaration explaining his mistake. (ECF 141 at 4.) And in support of its challenge to his declaration refers the Court to a credit report from Trans Union which was never provided to him:

3

> ATTENTION:
> This is a "Print Image" conversion of a "Credit Report Life" data record from TransUnion's proprietary CRS3 application, specifically an internal set of credit report data created on the date shown above, for the File Identification Number and Activity Number shown above. Although this "Print Image" is formatted in the same fashion as a Consumer Disclosure, it was not transmitted to any consumer and was not created for that purpose. This "Print Image" report is intended for internal/audit use only.

(Ex. 1, TU 5.) PNC also directs the Court to a credit report excerpt that is dated February 10, 2021, months after he discovered that PNC's credit reporting arose from the Disputed Line of Credit, not an old motor vehicle lease. (ECF 114-5 at PNC 74; Pl's Reply to PNC Resp. to Pl's CSMF ¶¶ 36.) PNC's attempt to discount the veracity of Plaintiff's declaration is simply immaterial. Either Plaintiff agreed to the Disputed Line of Credit or he did not, and a mountain of evidence establishes that he did not.

**B.    PNC Inaccurately Reported Plaintiff as Delinquent on the Disputed Line of Credit, and Plaintiff Disputed This Inaccurate Reporting.**

PNC simply repeats the same position in its response and throughout this case: Plaintiff signed a signature card on his parent's checking account in 2007 when the account was held by National City Bank. (ECF 134 at 6-7). That much is obvious. Mr. Duncan became the caretaker for his elderly parents and signed a signature card in order to help his parents. But that is honestly all that PNC has produced in all of this litigation. And the Signature Card says nothing about overdraft protection or a line of credit. (Ex. 27, PNC 30(b)(6) Dep. Tr. 18:12-19:19, 20:14-21:1, 25:7-27:2, 32:22-35:5, 35:6-35:10, 35:18-36:19, 37:10-39:24, 45:5-45:9, 46:2-46:17, 95:1-96:3). In fact, after all of this, PNC still has not produced or identified any such side contract or document beyond the signature card. (ECF 142, ¶2-7). Plaintiff has exhaustively detailed his argument and support in opening, and nearly none of such was answered.

**C.    PNC Violated § 1681s-2(b) by Failing to Properly Note Its Reporting As Disputed When Responding to At Least Nine ACDVs**

4

Defendant largely ignores both Plaintiff's argument and the established law in this Circuit, as well as in the Fourth, Ninth and Eleventh. (ECF 118 at 11-13). Again, the statute itself answers this and requires a fulsome response after an investigation. The reasoning within the many decisions cited on this question is that § 1681s-2(b)(1)(C) and (D) require that PNC "report the results of the investigation" to the CRA. These "results" include Defendant's knowledge that the account is disputed, which is an entirely different circumstance and type of tradeline than one in which the consumer simply fails to pay.

PNC's second argument is that the "XB" code is not required by the (now-settled) CRAs after they recently modified their manual, the Credit Reporting Resource Guide ("CRRG"). But the issue is not simply whether an XB code was appropriate. Defendant also refused to report any number of the alternate codes in the CRRG. (PNC 743). *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 836 (E.D. Va. 2017) (Granting summary judgment where creditor failed to report the "XB" or the "XC" code, which denotes, "Completed investigation of FCRA dispute—consumer disagrees.")

5

Dated: December 3, 2024            Respectfully submitted,

**ERNEST LEE DUNCAN, JR.**

By     */s/ Drew D. Sarrett*
Drew D. Sarrett (*Pro Hac Vice*)
CONSUMER LITIGATION ASSOCIATES, P.C.
626 E. Broad Street, Suite 300
Richmond, VA  23219
(804)-905-9900 - Telephone
(804) 905-9902 - Facsimile
Email:  drew@clalegal.com

Leonard A. Bennett (*Pro Hac Vice*)
Adam Short (*Pro Hac Vice)*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbenett@clalegal.com
Email: adam@clalegal.com

*Counsel for the Plaintiff*