**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERNEST LEE DUNCAN, JR., | |
| Plaintiff, | Civil Action No. 2:22-cv-01717-PLD |
| v. | |
| PNC BANK, N.A.; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; and EQUIFAX INFORMATION SERVICES, LLC | |
| Defendants. | |

**PRE-TRIAL STATEMENT**

Defendant, PNC Bank, N.A. ("PNC"), by and through the undersigned counsel, files this Pre-Trial Statement pursuant to Local Civil Rule 16.1.C and this Court's November 12, 2025 Order (CM/ECF No. 209).

## A.   NARRATIVE STATEMENT OF MATERIAL FACTS

This case involves accurate credit reporting and reasonable investigations into Plaintiff's many indirect credit disputes.  Plaintiff's displeasure with PNC's accurate credit reporting does not change the fact that he has not and cannot adduce evidence in support of his liability claim and suffered no actual, pecuniary harm as a result of PNC's credit reporting. As a result, Plaintiff will not be able to carry his burden of proof and his Fair Credit Reporting Act ("FCRA") claim will fail.

### 1.   History of Plaintiff's Account

On February 1, 1976, Plaintiff's father and stepmother, Ernest Duncan Sr. and Betty Duncan ("the Duncans"), opened a National City Preferred 50+ Interest Checking Account (the "Checking Account"). The Duncans maintained an overdraft

1

protection line of credit on the Checking Account from February of 1976 onward. The line of credit was linked to the Checking Account since its inception.

As Plaintiff's father and stepmother aged, Plaintiff took over responsibility for managing the Duncans' finances.  On August 25, 2007, Plaintiff became a joint owner of the Checking Account as evidenced by execution of a Signature Card.  The Signature Card explicitly states all signatories are account owners and are bound by pertinent Account Agreements and subsequent amendments.  At the time Plaintiff signed the Signature Card, he updated the address associated with the Checking Account to be his home address. This was done intentionally so that Plaintiff would receive all account statements and correspondence.  Plaintiff and the Duncans made use of the line of credit overdraft protections on the Checking Account, with $633.25 in advances made from 2007 through 2010 as evidenced by the Checking Account statements sent directly to Plaintiff's home.

PNC acquired National City Bank in 2008. By virtue of this acquisition, the Checking Account—including the line of credit overdraft protection and the outstanding balance owed at that time for overdraft advances—was transferred to PNC and became a PNC account.  On February 22, 2010, PNC sent account correspondence to Plaintiff explaining that PNC was separating the Checking Account into a PNC Smart Checking Account and a PNC Overdraft Protection Line of Credit (the "Account"). The correspondence identified Plaintiff's new PNC account number for the Account and confirmed that separate monthly account statements for the Checking Account and Account would be sent to Plaintiff's address.    The

correspondence also expressly advised that activity on the Account—including delinquencies—would be reported to credit reporting agencies. Plaintiff and his parents continued to make use of the overdraft protections afforded by the Account.

The Duncans passed away in 2009 and 2010, respectively. In December 2010, Plaintiff paid off the amounts owed under on the Account. Plaintiff did not close the Account. PNC continued to send statements and correspondence to the Plaintiff's home address.

In 2019, the Checking Account changed from a Smart Checking Account (which was essentially free) to a Standard Checking Account (which included a $3 standard fee). PNC sent notice of this change on June 18, 2019 to Plaintiff's last known address. Because of this change, fees were imposed on the Checking Account, which in turn triggered the overdraft protections in November of 2019. This cycle continued in December 2019 and from January 2020 to May 2020. No payment was received on the Account until September 11, 2020. On September 11, 2020, Plaintiff paid $38 in outstanding overdraft protection fees accrued and closed both the Checking Account and the Account.

### 2.    PNC's Credit Reporting and Plaintiff's Credit Disputes

PNC began reporting the Account on Plaintiff's credit sometime around June 2013. Plaintiff frequently checked his credit score, and he requested copies of his credit report on numerous occasions prior to 2019. In fact, TransUnion's records indicate that he requested a copy of his credit score on a monthly basis throughout 2019.

In December 2019, Plaintiff noticed the change in his credit report almost immediately due to the Account activity triggered by the overdraft fees. On or about December 20, 2019, the Plaintiff initiated an indirect credit dispute concerning the reporting of the Account. Significantly, Plaintiff's initial credit dispute questioned the reporting on the basis that the Account should be closed. The dispute did not concern ownership of the Account.  PNC assigned a member of its Credit Bureau Investigation Team to investigate Plaintiff's dispute.  The investigator reviewed the information provided in the dispute, PNC's records, and source documents finding the reporting was accurate, namely, the Plaintiff was an owner of the Account, which was never closed.

On March 21, 2020, the Plaintiff initiated a second indirect dispute related to PNC's reporting.  Once again, the Plaintiff *did not* dispute ownership of the Account. To the contrary, in his dispute, the Plaintiff tacitly acknowledged that he owned the Account, stating, "[t]his account should be zero I have not used it in decades."  PNC assigned a different member of its Credit Bureau Investigation Team to investigate Plaintiff's second dispute.  This investigator also reviewed the information provided in the dispute, PNC's internal records, and source documents concerning the Account and again found PNC's reporting to be accurate.

When the Account became delinquent, PNC began reporting the delinquency to the CRAs. Following the change in reporting, Plaintiff's disputes noticeably changed from questioning the balance to claiming the Account does not belong to him. The third dispute in February 2021, was markedly different from his first two indirect

disputes.  For the first time, Plaintiff claimed that the Account did not belong to him and should not be reporting on the Plaintiff's credit at all.  PNC's Credit Bureau Investigation Team investigator assigned to this dispute reviewed the information provided with the dispute, PNC's records, and PNC's source documents and determined PNC's reporting was accurate. In two disputes initiated in March 2021, Plaintiff claimed the Account "[b]elongs to another individual with the same/similar name."  Two different Credit Bureau Investigation Team investigators reviewed all the information sent with the disputes, evaluated PNC's internal records and source documents, and again confirmed that the Account belonged to the Plaintiff.

Plaintiff maintained this position in multiple disputes initiated between August of 2021 and May of 2022.  In these disputes, Plaintiff continued to contradict the position he took in 2019 and 2020 claiming the Account did not belong to him.  In August 2021, Plaintiff stated, "[t]his account belonged to my deceased parents yet there is apparent fraudulent activity not initiated by my deceased parents AFTER THEY WERE DECEASED."  In disputes initiated in 2022, the Plaintiff took a similar position, stating, "I did not authorize this account, and have no responsibility for said account as it belonged to my deceased father and step mother."

PNC's Credit Bureau Investigation Team investigators continued to investigate these disputes individually, when received, reviewing the materials submitted by the Plaintiff, PNC's records, and original account documents.  These investigations all found the same thing; that Plaintiff's Account was being reported accurately and each updated to reflect the status of the Account.

In August 2021, Plaintiff also sent direct disputes to PNC nearly identical to those he sent to the CRAs. Plaintiff provided proof he had paid off the Account and requested PNC remove reference to the Account. In response, on September 20, 2021, PNC sent Plaintiff a letter stating it was making adjustments to its reporting on the Account to remove reference to the delinquent payment as a courtesy. PNC did not remove reference to the Account. On October 25, 2021 and December 7, 2021, counsel for Plaintiff submitted direct disputes stating that although PNC removed reference to the delinquency, it did not remove reference to the Account. The letters claim Plaintiff "has never been associated with his name or social security number, and he was never contractually responsible for the same." PNC investigated and responded to the additional direct disputes determining Plaintiff was responsible for the Account and its reporting was accurate.

## B.    DAMAGES

PNC is not claiming any damages in this case.[1] Plaintiff may only claim actual damages, costs, and attorneys' fees. 15 U.S.C. § 1681s-2(b). Plaintiff is precluded from claiming or recovering statutory or punitive damages per the Court's December 18, 2025 Order. DN 203, 204.

At the outset, PNC will argue Plaintiff is not entitled to recover any damages as its reporting was accurate. *Shareef v. Capital*, 2022 WL 1045533, at *7 (E.D. Pa. April 7, 2022)("As a threshold matter, the consumer must establish that the furnished

---

[1] While PNC is not seeking any damages, PNC did serve an Offer of Judgment pursuant to Fed. R. Civ. P. 68 during the pendency of this case which was rejected by Plaintiff.  If PNC prevails or Plaintiff wins a less favorable judgment than the amounts offered by PNC, PNC intends to seek its recoverable costs and/or fees to the full extent permitted by Fed. R. Civ. P. 68(d).

information is inaccurate.") Without establishing this threshold element, Plaintiff is not entitled to recover damages. *Gatanas v. Am. Honda Fin. Corp.*, 2020 WL 7137854, *6, n. 3 (D. N.J. Dec. 7, 2020) ("[Plaintiff] cannot press a claim that Honda's investigation was unreasonable without some showing that Honda's reporting was inaccurate").

Further, PNC will argue Plaintiff is not entitled to recovery of damages because PNC's investigation was reasonable. *Bonilla v. Am. Heritage Fed. Credit Union,* No. 20-2276, 2021 WL 679306, at *15 (E.D. Pa. Feb. 22, 2021) (reasonableness of furnisher investigation was "beyond question" as plaintiff failed to show investigation was unreasonable). Again, if Plaintiff is not able to establish PNC's investigation was unreasonable, damages are inappropriate.

Finally, PNC will argue Plaintiff has not presented any evidence of actual damages directly associated with PNC's investigation of the disputes. *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 609 (E.D. Pa. 2012) ("Plaintiff can recover only for those damages caused by Defendant's unreasonable investigations.") Without any evidence of actual damages attributable to PNC's investigation, Plaintiff is not entitled to recover any damages.

## C.    WITNESSES

| Name | Address | Phone Number | Expected to Present or May Present |
|------|---------|--------------|-----------------------------------|
| Mike Bevins – PNC Corporate Designee | c/o attorney John Berry | c/o attorney John Berry | Expected to Present concerning liability |
| Kenneth Hafner | c/o attorney John Berry | c/o attorney John Berry | May Present concerning liability |
| Milton Azeem | c/o attorney John Berry | c/o attorney John Berry | May Present concerning liability |
| Valerie Brooks | c/o attorney John Berry | c/o attorney John Berry | May Present concerning liability |
| Sharon Kapinski | c/o attorney John Berry | c/o attorney John Berry | May Present concerning liability |
| Derek Geraci | c/o attorney John Berry | c/o attorney John Berry | May Present concerning liability |
| John Ulzheimer | c/o counsel for Defendant PNC Bank | c/o counsel for Defendant PNC Bank | Expected to Present concerning liability and damages |

| Plaintiff Ernest Duncan, Jr. | c/o counsel for Plaintiff | c/o counsel for Plaintiff | May Present concerning liability and damages |
|---|---|---|---|
| Records custodians necessary to authenticate documents produced in this case, expressly including records custodians to authenticate documents produced in this litigation for co-Defendants TransUnion, Experian, and Equifax | c/o Counsel of record for each respective co-Defendant in this case. PNC reserves the right to supplement if it becomes necessary to call any records custodians from any other entity. | c/o Counsel of record for each respective co-Defendant in this case. PNC reserves the right to supplement if it becomes necessary to call any records custodians from any other entity. | May Present concerning liability and damages. |

## D.    DEPOSITION EXCERPTS

PNC does not anticipate presenting any witnesses by deposition. PNC reserves the right to use deposition testimony for impeachment purposes.

## E.    EXHIBITS

| Exhibit Number | Description | Bates Number | Expected to Present or May Present |
|---|---|---|---|
|  | Account Agreement | PNC 1-9 | Expected to Present |

|  | Correspondence with Plaintiff | PNC 10-67 | Expected to Present |
|---|---|---|---|
|  | Credit Disputes | PNC 68 – 126 | Expected to Present |
|  | Line of Credit Account Statement | PNC 127-162 | Expected to Present |
|  | Account Balance Sheets | PNC 163-168 | Expected to Present |
|  | Cash Reserve Agreement | PNC 181-182 | Expected to Present |
|  | Account Statements | PNC 183-218 | Expected to Present |
|  | Account Number Change | PNC 219-220 | Expected to Present |
|  | Account update letter | PNC 221-255 | Expected to Present |
|  | Account cross-reference inquiry | PNC 256-259 | May Present |
|  | 2023 ACDV | PNC 1338-1339 | Expected to Present |
|  | UTL Comments | PNC 1340 | May Present |
|  | CRSS Notes | PNC 1341-1353 | May Present |
|  | Payment Receipt | PNC 1354-1355 | Expected to Present |
|  | ACLS screens | PNC 1358-1373 | May Present |
|  | Master File CIF | PNC 1374 | May Present |

| | | | |
|---|---|---|---|
| | ACLS Monetary and Non-Monetary Screens | PNC 1375-1416 | May Present |
| | Cash Reserve Information | PNC 1417-1418 | Expected to Present |
| | Any and all pleadings, briefs, and orders filed in this matter, including any document or exhibit. | DN 1-209 | May Present |
| | Any document produced in discovery by Plaintiff Ernest Duncan | | May Present |
| | Any documents produced by co-Defendants TransUnion, Equifax, or Experian in response to discovery requests propounded by Plaintiff. | Inclusive of all documents obtained by Plaintiff responsive to its document requests in this case, and specifically including TU 250-281 and EIS-DUNCAN 1-111 | May Present |
| | Any document identified on the Exhibit List submitted by Plaintiff Ernest Duncan | | May Present |
| | Any document or other record needed for purpose of rebuttal | | May Present |
| | Any document or other record needed for purposes of impeachment | | May Present |

| | | | |
|---|---|---|---|
| | Any document or other record needed to refresh a witness's recollection pursuant to Federal Rule of Evidence ("FRE") 612 | | May Present |
| | Any learned treatise utilized pursuant to FRE 803(18) | | May Present |
| | Pursuant to FRE 106, PNC reserves the right to introduce any writing or recorded statement or part thereof which ought in fairness to be considered contemporaneously with any writing or recorded statement introduced by PNC | | May Present |
| | PNC reserves the right to make use of charts, summaries, and calculations summarizing voluminous writings, recordings, or photographs pursuant to FRE 1006. | | May Present |
| | All demonstrative exhibits necessary | | May Present |

## F.     LEGAL ISSUES TO BE ADDRESSED AT PRE-TRIAL CONFERENCE

1.      Whether PNC accurately reported Mr. Duncan's Account to the Credit Reporting Agencies? The answer is yes.

2.      Whether PNC's investigations of Mr. Duncan's indirect credit disputes were reasonable? The answer is yes.

3.      Whether Mr. Duncan has proven actual damages associated with PNC's investigation? The answer is no.

4. Whether the damages Mr. Duncan is seeking in this action are barred or limited by the One Satisfaction rule? Assuming *arguendo* that Mr. Duncan proves he suffered recoverable damages, the answer is yes.

PNC may also present legal issues at the pretrial conference that are contained in its Motions *in Limine*.

## G. COPIES OF EXPERT DISCLOSURES

Copies of all expert disclosures by PNC's expert, John Ultzheimer are attached hereto as Exhibit A.

## H. COPIES OF PHYSICIAN REPORTS

No treating physician or medical evidence has been submitted by Plaintiff in this case.

Respectfully submitted,

**DINSMORE & SHOHL, LLP**

By:  /s/ *John J. Berry*
John J. Berry, Esquire
DINSMORE & SHOHL LLP
Six PPG Place, Suite 1300
Pittsburgh, PA 15222
Phone: (412) 288-5854
Fax: (412) 281-5055
Email: John.Berry@dinsmore.com

*Counsel for PNC Bank, N.A.*

13

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, I served the foregoing via electronic mail to all counsel of record.

Drew D. Sarrett (*Pro hac vice*)
Consumer Litigation Associates, P.C.
626 E. Broad Street, Suite 300
Richmond, Virginia 23219
Phone: (804) 905-9904
Fax: (757) 930-3662
E-mail: kevin@clalegal.com
E-mail: drew@clalegal.com


Andrew James Urko
Joseph N. Parsons
Jones Day
BNY Mellon Center
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
412-394-7980
Email: aurko@jonesday.com
Email: jparsons@jonesday.com
*Counsel for Experian Information Solutions, Inc.*


/s/ John Berry
*Counsel for PNC Bank, N.A.*

14